436 So.2d 1285 (1983)
ELLWEST STEREO THEATRES, INC.
v.
Antoinette "Nettie" M. DAVILLA.
Mrs. Antoinette Ybos DAVILLA
v.
ELLWEST STEREO THEATRES, INC.
GIANI INVESTMENT CO., INC.
v.
Mrs. Antoinette Ybos DAVILLA.
Nos. CA-0510CA-0512.
Court of Appeal of Louisiana, Fourth Circuit.
July 8, 1983.
Rehearing Denied September 22, 1983.
*1286 E. John Litchfield, New Orleans, for defendant-appellant Antoinette "Nettie" M. Davilla.
C. Ellis Henican, Jr., New Orleans, for plaintiff-appellee Giani Investment Co., Inc.
Lee J. Klein, Durand, Mich., Ronald J. Rakosky, New Orleans, for plaintiff-appellant Ellwest Stereo Theatres, Inc.
Before GULOTTA, GARRISON and KLEES, JJ.
GULOTTA, Judge.
At issue in this case is whether a holder of a "right of first refusal" on lease offers of real property is entitled to possession and to damages for lost profits for deprivation of his right of occupancy. The lessor and the present tenant appeal from an adverse judgment. We affirm.

BACKGROUND
Mrs. Antoinette "Nettie" M. Davilla, owner, leased the ground floor of the premises at 333 Bourbon Street in New Orleans to Ellwest Stereo Theatres, Inc. through May 31, 1980. The upper floors of the building were leased to Lowell F. Jones under a separate written agreement through May 31, 1984. Jones had a "5-day right of first refusal" on any lease offers for the ground floor from any parties whatsoever, including the present tenant (Ellwest) on expiration of its lease.[1]
On May 19, 1980, Davilla's attorney instructed Ellwest to vacate the ground floor on expiration of its lease. In a May 22, 1980 letter, Davilla's attorney then informed Jones that Davilla had negotiated a proposed lease of the ground floor to a new tenant, subject to Jones' right of first refusal. He attached a copy of the proposed lease and asked Jones to advise him within "... five (5) days from the receipt of this letter" whether or not he desired to exercise his "right to execute the proposed lease in lieu of the prospective lessee."
On receipt of this letter, Jones assigned his "right of first refusal" to a third party, Giani Investment Co., Inc. (Giani). On May 28, 1980, Giani's attorney wrote to Davilla and her attorney informing them of the assignment and Giani's exercise of the right of first refusal. He enclosed copies of the act of assignment and the proposed lease signed by Giani.
On May 30, 1980, Ellwest sought to enjoin Davilla's eviction, claiming an oral renewal of its lease. Davilla followed with a suit for eviction and these matters were consolidated. On June 20, 1980, the trial judge issued a preliminary injunction in favor of Ellwest. Based on conflicting testimony, the court concluded there was prima facie evidence of an oral lease sufficient for a preliminary injunction, but left the matter open for further hearing on the permanent injunction. The trial judge was unaware of Giani's exercise of its right of first refusal, and heard no evidence concerning this aspect of the case.
In the interim, on October 6, 1980, Giani filed suit against Davilla for damages and sought an order to compel her to lease the ground floor to Giani. Davilla third partied Ellwest in this action, and all matters were consolidated.
Before trial, Davilla and Ellwest compromised. Davilla granted a written five year lease of the ground floor to Ellwest from September 1, 1981 until August 31, 1986. *1287 Ellwest executed a hold harmless agreement in favor of Davilla, indemnifying her from any liability to Giani in the pending suit.
After trial on June 1, 1982, the court concluded that no oral lease had been confected between Davilla and Ellwest before May 31, 1980. The trial court then rendered judgment on June 29, 1982 cancelling the written lease of September 1, 1981 between Davilla and Ellwest, and ordering Ellwest to surrender the premises within 60 days. Davilla was ordered to execute a written lease to Giani to commence 30 days after Ellwest's departure. The trial judge further awarded $25,000 in damages in favor of Giani and against Davilla for loss of profits for a 25 month period from June 1, 1980 until the date of judgment, plus $1,000 per month thereafter "until plaintiff acquires physical possession of the premises." Judgment was further rendered in favor of Mrs. Davilla and against Ellwest on Davilla's third party demand for indemnity.
Appealing, Davilla and Ellwest contend that Giani failed to prove it had timely exercised the right of first refusal upon termination of Ellwest's tenancy on May 31, 1980.[2] Alternatively, appellants contend that Giani was not entitled to damages while the preliminary injunction against Ellwest's eviction was pending and that Giani failed to establish damages with reasonable certainty. We disagree.

LIABILITY
We reject the contention that the evidence is insufficient to prove Giani's proper exercise of right of first refusal.
In written reasons, the trial judge states "on May 28, 1980 Jones assigned his lease to Giani and notified Davilla of the assignment", and further notes that the parties had not disclosed "Giani's assignment and right of first refusal" at the June 20, 1980 hearing on the preliminary injunction. Furthermore, the judgment orders Giani and Davilla "to execute a written lease, as proposed on May 28, 1980" [emphasis ours], an obvious reference to the May 28 letter from Giani's attorney to Davilla's attorney, whereby Giani exercised its right of first refusal.
The record supports the trial court's implicit conclusions. Kishore Motwani, vice president of Giani, testified that his company had obtained the right of first refusal from Jones on May 28, 1980, and exercised it on the same day, as evidenced by the letters from Giani's attorney to Davilla and her attorney. Significantly, these letters, introduced as exhibits, enclosed copies of the act of assignment and Davilla's proposed lease signed by Giani. The letter to Davilla's attorney states in pertinent part:
"We submit herewith the lease which you proposed to Mr. Jones with your letter of May 22, 1980, which was received by him on May 27, with the substitution therein of our client's name [Giani], as lessee, and, all other particulars being the same...." [emphasis ours]
Because Davilla's attorney gave Jones five days from receipt of his letter of May 22 to exercise the right of first refusal, Giani's exercise of that right on May 28, one day after Jones' receipt of the letter, was timely. Furthermore, appellants offered no evidence to rebut Giani's prima facie case. Under these circumstances, we cannot say the trial court erred.

QUANTUM
Turning now to appellant's arguments concerning the damages, we find no error in the trial judge's award of $1,000 per month to Giani for loss of business profits for deprivation of occupancy after May 31, 1980.
At the outset, we reject appellants' contention that the trial court's preliminary injunction of June 20, 1980 precludes an award of damages to Giani. According to appellants, Giani's damages for lost profits from an inability to operate its business were the result of Davilla's compliance with *1288 a legitimate court order enjoining her from evicting Ellwest.
The pendency of the eviction suit and the trial court's issuance of the preliminary injunction do not affect Giani's entitlement to damages. The mere fact that Ellwest remained in the premises until a final judgment of eviction does not mean that the injured third party, Giani, cannot receive damages relating back to the date of the breach, June 1, 1980. On that date, Ellwest was obligated to vacate the premises upon expiration of its lease, and Davilla was obligated to honor Giani's exercise of the right of first refusal. Giani's damages accrued from the breach of those obligations, despite the pendency of the litigation and the injunction. See Ill. Cent. Gulf R. Co. v. Intern. Harvester, 405 So.2d 545 (La.App. 4th Cir.1981), writ denied 407 So.2d 731 (La.1981).
We likewise find no error in the amount of the award. In written reasons, the trial judge stated that he was "very aware and sensitive" to problems in awarding lost business profits, but that plaintiff's evidence was "reasonable and non-speculative." Based on the evidence, the judge concluded that the $1,000.00 per month figure is what Giani would have earned "conservatively... after deduction of all expenses had it occupied the premises...." The record supports his conclusion.
Giani's vice president, Kishore Motwani, testified that he had intended to operate a retail store on the premises, selling gift items, souvenirs and T-shirtsthe same sort of merchandise sold at Giani's chain of similar shops and those of Motwani's other company, Motwani America, Inc., in the French Quarter.[3] Motwani predicted that sales at the 333 Bourbon location would have been the same if not better than his other stores because of its proximity to the Royal Sonesta Hotel.
Giani's expert accountant, James Groetsch, testified at length concerning the amount of damages. To project the loss in profit from deprivation of a retail store at 333 Bourbon, he averaged monthly sales and net profit figures for Giani and Motwani's other Bourbon Street outlets during 1980-1982. The trial court's award of $1,000.00 per month in lost profits is within the monthly range of the average net profit figures per store furnished by Groetsch, after taking out all operating expenses and bonuses and other compensation to officers.
Although Groetsch did not consider differences in square footage of sale space or competition the other outlets faced, he testified that there was some fair uniformity of sales and not a tremendous amount of variance among the comparables. His figures based on corporate records and tax returns were introduced into evidence. No expert testimony was offered to refute this evidence.
Our courts have held that although awards may not be based on speculation or conjecture, nonetheless, lost profits are recoverable when proven with reasonable certainty. Al Smith's Plumbing, Etc. v. River Crest, Inc., 365 So.2d 1122 (La.App. 4th Cir.1978); Folds v. Red Arrow Towbar Sales, 378 So.2d 1054 (La.App. 2nd Cir. 1979).
Customary or foreseeable profit may be resorted to as a measure of damage where there is no direct evidence of the exact extent of loss. Al Smith's Plumbing, Etc. v. River Crest, Inc., supra; Folds v. Red Arrow Towbar Sales, supra. Indeed, in Recherche, Inc. v. Jewelry Jungle, Inc., 377 So.2d 1329 (La.App. 1st Cir.1979), writ denied 379 So.2d 254 (La.1980), calculation of lost profits by plaintiff's expert using sales figures from plaintiff's four other stores as samples was described as "a most reasonable method of approximating damages not capable of being exactly calculated." See also Southern Plastics, Etc. v. Dixie Brewing *1289 Co., 399 So.2d 643 (La.App. 4th Cir. 1981), where the plaintiff's promotional campaign in a prior year was used as a basis for comparison in calculating loss of profit in an unsuccessful later campaign.
The evidence considered, we cannot say that the trial court's award of damages at the rate of $1,000.00 per month for loss of occupancy is speculative or unreasonable. The award in our case is consistent with the figures presented by plaintiff's expert based on comparable sales of the same sort of merchandise at Giani's other retail outlets on Bourbon Street.
Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] The pertinent clause of the rider-agreement provides as follows:

8. Lessee is granted a 5-day right of first refusal on any purchase offers for the entire building (333 and 335 Bourbon), received during the primary or renewal terms of this lease. Subject lease to survive, in all its terms and conditions any sale of the property during its primary or renewal terms to a third party. Also, lessee is granted a 5-day right of first refusal on any lease offers for the ground floor only of subject building (333 Bourbon) received from others than the present tenant (theatre) during their existing lease, or any option renewal thereof; and/or from any parties whatsoever, including present tenant (theatre) after expiration of their renewal option.
[2] Ellwest and Davilla state in brief that they do not appeal or contend as error the trial court's finding that no oral lease was entered into between Ellwest and Davilla before May 31, 1980.
[3] Giani's other retail outlets on Bourbon Street are: Temptations at 420 Bourbon, Memories at 422 Bourbon, Image Makers at 504 Bourbon, Tee Shirt Factory at 611 Bourbon, Bayou Country at 611 Bourbon and High Times at 631 Bourbon.

Similar stores operated by Motwani America, Inc. include: Linda's Boutique and Mad Mad World at 231 Bourbon, Souvenir Junction at 504 Bourbon, Blow-up at 515 Bourbon, and Guru and Kamsutra at 611 Bourbon.