DUFRESNE, Judge.
This is an appeal by John Bailey, plaintiff, from a jury verdict in favor of defendants Billy Hagle, Hagle’s employer, Texa *901 co, Inc. and its insurer, Insurance Company of North America, and State Farm Mutual Automobile Insurance Company, plaintiffs UM insurer, in a suit arising out of a 28 vehicle chain-reaction accident on a fogbound interstate highway. Because we find no prejudicial or other reversible error in the conduct of the trial, we affirm.
The accident occurred at about 7:30 A.M. on September 25, 1981, in the eastbound lanes of the elevated portion of Interstate 10, a few miles east of its junction with Interstate 55. Billy Hagle was driving toward New Orleans to attend a company meeting. As he approached the area of the accident he noticed some light intermittent fog, but was able to proceed safely at 55 MPH. However, as he went over a rise in the highway where it crosses the Bonnet Carre spillway levee, he encountered a dense fog bank in which visibility was suddenly reduced to about 20 feet. He testified that he immediately took his foot off the accelerator, but did not apply his brakes because he was afraid of being struck from the rear if he slowed too quickly. At that time he had his lights on and was in the left lane. He thought of moving into the right lane and then stopping on the right emergency shoulder, but traffic in the right lane prevented this.
When he had slowed to about 45 MPH, he saw in his rear-view mirror two headlights and a large chrome bumper rapidly overtaking him. He pushed the accelerator to the floor in an attempt to outrun what turned out to be a loaded 18-wheel gravel truck, but to no avail. However, after his car was struck in the rear, he continued to accelerate and pulled away from the truck. He drove for another two hundred feet or so, but a metal part at the rear of the car which he feared might be the gas tank was dragging on the pavement so he decided to pull to the left of the highway as far as possible and stop.
The only other eye-witness to this portion of the accident was Pierce Phillips, the driver of the gravel truck that rear-ended Hagle. He and Curtis Hayes, driving a second loaded gravel truck, were both on the way to New Orleans to make a delivery, and they too were in the left lane. Phillips’ version of the accident was that when he ran into the fog he took his foot off the accelerator and placed it on the brake pedal, but did not apply the brakes because he, like Hagle, feared being rear-ended. He said that suddenly Hagle’s taillights appeared about 20 feet ahead. He immediately slammed on his brakes and when he did so he was in fact rear-ended by Hayes. Phillips’ truck in turn struck Hagles’ car. Phillips noted that after this collision Hagle’s car gradually pulled away from him and disappeared into the fog. The two trucks came to a stop, one behind the other, almost against the left railing of the highway.
John Bailey, plaintiff, testified that as he approached the scene in his van he realized that there had been an accident. He turned on his emergency flashers and began tapping his brakes, thus flashing his brake lights, to give additional warning to following drivers. As he was slowing to a safe stop over 100 feet behind Hayes’ truck, he was struck from behind, possibly by yet a third gravel truck driven by David McGee. This truck turned over and eventually slid to a stop on its side to the right of Hayes’ truck and about 92 feet past Bailey’s van. McGee was apparently knocked unconscious and was unable to remember ever seeing or striking the van. As for Bailey, he was unable to say what vehicle actually struck him, and no accident reconstruction expert was called to further develop this issue. Other collisions followed and eventually 28 cars and trucks were involved.
Bailey sued Phillips, Hayes, McGee, and Hagle, these parties’ respective employers and insurers, as well as State Farm, his own UM insurer. Prior to trial all defendants settled except for Hagle, Texaco, Insurance Company of North America, and State Farm. After a two day trial, during which the jury heard the live testimony of Hagle and Bailey and the deposition testimony of Phillips and McGee, it found that Hagle, Phillips and Hayes were negligent, but that their negligence was not a cause in fact of Bailey’s injuries. Bailey now appeals and urges two assignments of er *902 ror. We note here that plaintiffs appellate counsel was not his trial counsel.
The first error urged concerns the trial judge’s denial of a motion for a continuance, -and refusal to issue an instanter subpoena. These rulings were made on the morning of the second day of trial when the court and plaintiff’s counsel were informed that State Trooper Lentini, one of the investigating officers, had not been served with plaintiff's witness subpoena and was unavailable to testify. The background of this problem was that plaintiff had requested, two weeks before trial, that a subpoena issue to the trooper. Near the end of the first day of trial plaintiff’s counsel informed the court that there was no return on the subpoena. The judge asked his bailiff to locate the trooper and a few minutes later it was reported that he would be on night duty at Troop B Headquarters from 6:30 P.M. until 6:30 A.M. The phone number of this office was given to counsel. When trial recommenced the next day, the judge informed counsel that the trooper had called him that morning, denied having received the subpoena, and further informed the court that he would be taking his lieutenant’s examination, lasting the entire day, in Baton Rouge. Counsel thereupon requested that an instanter subpoena issue or alternatively that the trial be continued. The trial judge refused to do either, and pointed out to counsel that he should have been more diligent in following up on his requested subpoena prior to commencement of trial. The record is silent as to whether counsel had ever deposed this officer, or indeed ever spoke to him about what testimony he might have given, either before trial, during the evening of the first day of trial when his whereabouts and phone number were made available, or since trial.
What the record does disclose is that Trooper Lentini was one of five officers who investigated the entire accident, and was apparently the only one still employed by the State Police at the time of trial. The actual police report, submitted on proffer, was neither prepared nor signed by Lentini, and indicates only that he arrived at the scene one hour and ten minutes after the accident and was asked by the chief investigating officer to take measurement as to the locations of the various vehicles. The diagram of the scene attached to the report shows Hagle’s car up against the left hand railing and 168 feet ahead of the front of Phillips’ truck. The Phillips and Hayes trucks are similarly shown one behind the other near the left hand railing. Plaintiff’s van is shown about 100 feet behind the Hayes truck and also against the left railing. Plaintiff’s pre-trial order further shows that the officer was being called only as a fact witness.
Subsequent to trial, plaintiff urged a motion for a new trial to which he appended documents purporting to show that Trooper Lentini had indeed been properly served prior to trial by delivery of the subpoena to his ranking officer or designated representative, as per La.R.S. 13:3661.1. This motion was also denied by the trial judge.
Plaintiff now urges that these various rulings by the trial judge denied him access to a crucial witness, thus prejudicing his case, and asks that the judgment be set aside and the case remanded for a new trial.
A similar situation was addressed in Almerico v. Highland Insurance Co., 388 So.2d 1176 (La.App. 4th Cir.1980). There, an investigating officer had in fact been served with a witness subpoena, but failed to appear at trial. The trial court refused to grant a continuance, and this action was upheld on appeal because the affected party failed to establish that the officer was a material witness. The court noted that the officer’s knowledge would have been limited to facts which he saw after the collision, and it was doubtful that he could have established the manner in which the accident occurred because one of the vehicles did not remain at the point of impact.
In the present case, the officer in question did not reach the scene until one hour and ten minutes after the accident, and was therefore not an eye-witness to it. There is not question either that Hagle’s car was at least 168 feet from the point of impact, and the diagram of the scene shows Hagle’s car *903 and the Phillips and Hayes trucks in almost the exact stopping places indicated in the testimony of Hagle and Phillips. Finally, the testimony of each of these witnesses, who were in fact the only eye-witnesses to the actual collision between their vehicles, was completely consistent with that of the other in all pertinent particulars. In these circumstances, we fail to see what Trooper Lentini’s testimony could possibly have added to plaintiff’s case. '
Neither are we assisted on this point by briefs to this court. All that plaintiff offers in this regard is that the officer was the only impartial witness who could establish the “relative location, ownership/custody and condition of the vehicles at the accident scene.” However, as to Hagle, the only remaining individual defendant at trial, all of this information went to the jury via his and Phillips’ testimony, and the police report which the officer helped to prepare confirms entirely these facts. There was thus no conflict in the evidence presented to the jury as to any of these issues, and plaintiff has not so much as hinted to this court what specific testimony the officer might have offered to further elucidate or controvert the facts of the collision between Hagle and Phillips as presented to the jury. In these circumstances, we can only conclude that the actions of the trial judge did not prejudice plaintiff’s case, and we therefore decline to order a new trial on that ground.
The second issue here concerns admission of evidence to show that plaintiff had reached settlement agreements (but not the amount or details of the agreement) with Phillips and Hayes, and their respective employers and insurers, prior to trial. Plaintiff urges that defense counsel should not have been allowed, over objection, to examine him at the very end of trial on the existence of the agreements because such evidence is not admissible to prove liability of the released parties, under LSA-C.E. art. 408 A. Although we tend to agree that this evidence should have been excluded, we also find that its admission, on the facts of this case, is not grounds to order a new trial.
As a general rule, when the appellate court has a complete record before it and the trial court error concerns the exclusion or admission of evidence, the reviewing court should determine the case on facts as well as law, Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). We recognize, of course, that when the weight of the evidence is nearly equal and a firsthand view of the witnesses is necessary for determination of their credibility, that remand for a new trial should instead be ordered, Moore v. Clark, 517 So.2d 293 (La.App. 1st Cir.1987). However, in the present case the facts of the accident are clear-cut and overwhelmingly show that Billy Hagle was not liable for plaintiff’s injuries.
It is well established that when visibility is impaired by fog a driver must exercise care commensurate with the severity of the conditions, i.e. he must reduce speed, maintain a close lookout and, if necessary, stop his vehicle, Campbell v. American Home Assurance Company, 258 So.2d 81 (La.1972). Moreover, whether a driver’s conduct falls below the objective standard for his self-preservation depends upon all of the factual circumstances of the situation, id.
Our review of the facts of the present case shows that Hagle did precisely what any prudent driver should have done when confronted suddenly with the fog bank. He immediately took his foot off the accelerator and looked to his right to see if he could pull through the right lane and then on to the shoulder. When this was prevented because of other traffic, he kept a lookout to the rear for overtaking vehicles. Unfortunately, he was still struck from the rear by Phillips. The only other course of action open to Hagle was simply to stop, in which case he would have been hit by Phillips even sooner, and most probably seriously injured, if not killed. Considering all of these factual circumstances, we can only conclude that there was no negligence on Hagle’s part, and that he is therefore not liable to plaintiff, Bonilla v. Arrow Food Distributors, Inc., 202 So.2d 438 (La.App. 4th Cir.1967).
*904 For the foregoing reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.